IN THE MATTER OF: DANIEL WEST, JUVENILE

No. 9225DC615

(Filed 6 April 1993)

**Infants or Minors § 130 (NCI4th)— juvenile sex offender—in-state dispositional alternatives inadequate—no authority of court to order out-of-state treatment—best in-state alternative ordered—order proper**

The trial court did not err in its dispositional order which placed the juvenile, who was developmentally disabled and had a history of sexual abuse, at the Whitaker School, an in-state residential treatment program which had available to it the services of a sexual offender specific treatment professional on at least a once a week basis, though the court found that none of the options available in this State met the juvenile's needs, that facilities in South Carolina could meet the juvenile's needs, and that the court was bound by the Supreme Court's decision in *In re Brownlee*, 301 N.C. 532, and so could not direct the local DSS to pay for that placement, since the placement which the lower court did make was the best dispositional order it could make under the circumstances of the case.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 29-33.**

**Liability of parent for support of child institutionalized by juvenile court. 59 ALR3d 636.**

Appeal by the juvenile from order entered 28 February 1992 by Judge Jonathan L. Jones in Caldwell County District Court. Heard in the Court of Appeals 8 February 1993.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General, Jane Rankin Thompson, for the State.*

*Beach, Correll & Beach, P.A., by N. Douglas Beach, Jr., for the juvenile appellant.*

COZORT, Judge.

In this appeal, a fourteen-year-old juvenile contends the trial court erred in its dispositional order which placed the juvenile at the Whitaker School. We affirm.

In September 1991, the juvenile was adjudicated delinquent based on his admission that he had committed a felony sexual assault upon his younger half-sister. Disposition was deferred pending completion of an evaluation of the juvenile by the local sex offender program. In the interim, the juvenile was placed in the physical custody of his grandparents and prohibited from being around the victim.

The evaluation showed that the juvenile was developmentally disabled and had a history of sexual abuse. The evaluator concluded that the juvenile's risk of re-offending was moderate to high and that therefore treatment of the juvenile in a residential setting was recommended. The evaluator recommended that the juvenile be placed in a residential setting appropriate for the care of developmentally disabled sex offenders, that the juvenile receive sex offender specific treatment, and that the juvenile be placed on probation for a sufficient term to exceed his treatment by at least one year. The projected length of the juvenile's treatment was three to five years.

By order entered 1 November 1991, the district court committed the juvenile to the Division of Youth Services for an indefinite term not to exceed his eighteenth birthday, suspended that commitment and placed the juvenile on probation, and directed the juvenile court counselor to immediately seek a residential placement setting for the juvenile appropriate for the care of a developmentally disabled sex offender. In the interim, the juvenile was to continue residing with his grandparents. The case was thereafter continued several times as efforts were made to locate a suitable placement for the juvenile and to secure funding for the placement considered most appropriate.

On 28 February 1992, the court entered a dispositional order resolving the issue of the appropriate placement for the juvenile. In its order, the court made lengthy findings of fact regarding the history of the case and the efforts made to locate an appropriate placement and funding for that placement. The court found the available options to be:

(1) Continued placement of the juvenile at his grandparents' home combined with continued treatment through the local outpatient sexual offender specific program;

(2) Attempted placement at the Whitaker School, which is an in-state residential treatment program that has available to it the services of a sexual offender specific treatment professional on at least a once a week basis;

(3) Commitment to the Division of Youth Services training schools, which offer limited treatment for sexual offenders;

(4) Continuing the case for further review of the possibility of placement in a hospital setting probably out-of-state on a short-term basis for treatment of sexual offenders with possible funding by the North Carolina Medicaid program; and

(5) Directing that the juvenile be considered for placement at the New Hope Center in South Carolina, which is a residential treatment program for sex offenders on a long-term basis.

The court noted, however, that there was no available funding for placement of the juvenile at the New Hope Center in South Carolina, and that because of the Supreme Court's decision in *In re Brownlee*, 301 N.C. 532, 272 S.E.2d 861 (1981), it could not direct the local department of social services to pay for that placement. In *Brownlee*, our Supreme Court held that the district court exceeded its authority when it ordered Wake County to pay for the treatment of a delinquent juvenile at a facility in another State.

The trial court below stated that it found the *Brownlee* decision to be "without basis in logic or reason," but recognized nonetheless that it was bound by the decision. The court also expressed its frustration over the alternatives available to it, finding that none of the options available in this state ever come close to meeting the juvenile's need for treatment or the need of the community for protection from further misconduct. The court found that placement at the New Hope Center in South Carolina was the only program known to the court that would meet the specific needs of the juvenile but because of the *Brownlee* decision, it could not order that option. The court found that the best *available* alternative was placement of the juvenile at the Whitaker School, and that if that placement was not possible, then the next best option was to look further into the possibility of intensive treatment for the juvenile at an out-of-state hospital.

The court ordered that "an attempt be made to immediately place the juvenile at the Whitaker School with provision for treatment on a regular basis for his developmental disability and sexual

offending behavior"; that an attempt be made to establish the treatment program on a long-term basis and to intensify the sexual offender portion of the treatment as intensely as possible under the circumstances and given the resources available; and that, in the meantime, the juvenile continue to receive treatment through the local outpatient sexual offender specific program. The court also directed the Department of Social Services to continue to inquire into other possible appropriate treatment programs for the juvenile and sources of funding for placements available.

As a further expression of its disagreement with *Brownlee* and frustration over its inability to place the juvenile in the South Carolina program, the court stated that it was "unable to enter an order which is in the best interest of this juvenile," or "which meets the needs of this child or the needs of the community for protection," or that "meets the guidelines and directives and purposes set forth in Chapter 7A of the General Statutes." The court concluded that the order entered is one "which comes closest to meeting the needs of the juvenile with the resources available to the court." From the order entered 28 February 1992, the juvenile appeals.

The juvenile contends the trial court erred by failing to enter an order which is in the juvenile's best interest and which meets the needs of the juvenile and the objectives of the State. He contends that because of the North Carolina Supreme Court's decision in *Brownlee* and the lack of response by our legislature to the need for adolescent sexual offender treatment programs in this state, the district court was unable to enter an order which is in the best interest of the juvenile and that meets the needs of the State, and that, as a result, his statutory right to rehabilitation and constitutional right to due process have been denied. As support, the juvenile relies primarily upon the dissent of Justice Carlton, joined in by Justice (now Chief Justice) Exum, in *Brownlee*.

In its brief, the State recognizes the need for adolescent sex offender treatment in this state and the frustration of the district court in the present case. The State contends, however, this Court is bound by *Brownlee*. The State further contends the district court properly recognized the limitations on its authority and entered the best dispositional order it could under the circumstances of the case. Lastly, the State contends the order entered was in the juvenile's best interest, allows for change and modification as

**IN RE WEST**

[109 N.C. App. 473 (1993)]

new information becomes available, and should be affirmed. We agree.

We are, of course, bound by the majority opinion in *Brownlee*, as is the trial court. The trial court here was charged with the duty of determining the *appropriate* disposition for the juvenile. *See Brownlee*, 301 N.C. 532, 272 S.E.2d 861. In making this determination, the district court was required to consider the particular needs and the best interest of the juvenile. *Id.* But the court was also required to weigh the best interest of the State, including the best interest of the State in the utilization of its resources, and was required to select a disposition consistent with public safety and within the court's statutorily granted authority. *Id.; In re Bullabough*, 89 N.C. App. 171, 365 S.E.2d 642 (1988). In weighing these interests and determining the appropriate disposition, the court was vested with broad discretion. *In re Groves*, 93 N.C. App. 34, 376 S.E.2d 481 (1989).

The disposition ordered here, while obviously not the one preferred by the trial judge, does reflect a proper balancing of the pertinent interests, is a proper application of the law, and does not constitute an abuse of discretion. It is therefore affirmed.

Lastly, we note the juvenile included in his argument a reference to an alleged violation of his constitutional rights. The record does not reveal that any constitutional issue was presented to the trial court; therefore, no constitutional issue is properly before this Court. *Midrex Corp. v. Lynch, Sec. of Revenue*, 50 N.C. App. 611, 274 S.E.2d 853, *disc. review denied*, 303 N.C. 181, 280 S.E.2d 453 (1981).

Affirmed.

Judges LEWIS and JOHN concur.